UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE
CIVIL ACTION NO. 3:16-CV-721-TBR-LLK

ANDREA PERCELL,                                                                                 PLAINTIFF

v.

COMMONWEALTH OF KENTUCKY
DEPARTMENT OF MILITARY AFFAIRS
And
UNKNOWN DEFENDANT(S),                                        DEFENDANTS

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant Commonwealth of Kentucky Department of Military Affairs's ("Commonwealth") Motion to Dismiss in Lieu of an Answer, [R. 18], pursuant to Federal Rule of Procedure 12(b)(6). Plaintiff Andrea Percell responded, [R. 19], and Commonwealth replied, [R. 20]. Fully briefed, this matter is ripe for adjudication. For the reasons stated herein, Commonwealth's Motion to Dismiss, [R. 18], is **DENIED**.

## BACKGROUND

The factual allegations as set out in the First Amended Complaint, [R. 17 (First Amended Complaint)], and taken as true are as follows. *See Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008) (citing *Great Lakes Steel v. Deggendorf*, 716 F.2d 1101, 1105 (6th Cir. 1983)). Andrea Percell is an African American female who began working as an Administrative Secretary at Bluegrass ChalleNGe Academy ("the Academy") on or around June 1999. [R. 17 at 2.] In hindsight, Percell states that during her nearly seventeen years of employment at the Academy she never felt that her job was in jeopardy. [*Id*. at 3.]

Allegedly, around 2000, Percell applied for the Administrative Specialist III position—a job that requires a bachelor's degree. [*Id.*] Percell possessed the obligatory bachelor's degree for the position. [*Id.*] Thereafter, Percell claims the position was offered to Vicky Harl, a white female who did not have the necessary degree or skills. [*Id.*] Over the years, as Harl proved to be incapable, Percell alleges that she was assigned Harl's job duties. [*Id.*] By 2011, Percell states that she was assigned all of Harl's job duties except "answering calls, sorting mail, processing cadet applications, and inputting data," none of which were actually the responsibilities of the Administrative Specialist III. [*Id.*] Percell recalls that since she was doing Harl's job in addition to her own, she requested to be advanced into a higher pay grade. [*Id.*] Allegedly, she did not receive it. [*Id.* at 4, ¶ 15.]

Around March 2013, another white female, Dottie Heffelfinger, was hired as Administrative Assistant, a Grade 8 paying position. [*Id.* at 3.] Percell claims that Heffelfinger was promoted to Administrative Specialist III, a Grade 12 paying position, approximately one to two months later, even though she did not have the requisite college degree. [*Id.*] Furthermore, Percell alleges that the position had not been posted in order to alert Percell that she could apply, which is required by job posting and filling procedures. [*Id.*] Percell states that she then requested to have the opportunity to advance to a higher pay grade, emphasizing that she was performing more job functions than Harl and Heffelfinger. [*Id.*] Despite this objection, in January 2014, Percell claims that Heffelfinger's job duties were given to Percell and Heffelfinger moved to an office near the Director. [*Id.* at 4.] Percell recalls that she complained to her Deputy Director that she, once again, was assigned another employee's job duties without a pay increase or an opportunity to advance to a higher pay grade position. [*Id.*] However, she was allegedly told "that is the way the Director wanted it." [*Id.*]

On or around June 2015, Percell alleges that she, Heffelfinger, and Harl were informed by the Director and Deputy Director at the time that Heffelfinger was to be promoted to the position of Budget Analyst, a Grade 5 paying position that required a bachelor's or graduate degree. [*Id*.] Percell states that Heffelfinger had neither. [*Id*.] At this time, Percell claims that she was again transferred additional job duties without a change in pay, despite her requests to be raised a pay grade. [*Id*.] Percell recalls that when she brought up the fact that she previously indicated interest in that position and the position was not posted, as required, she was told to "get over it." [*Id*.]

On or around March 30, 2016, Percell alleges that Commandant Michael Major, who had no supervisory authority over Percell, emailed Deputy Director Hampton that he felt Percell was "insubordinate" and that "she has a problem with those she 'falls under.'" [*Id*.] According to Percell, Hampton went on in the email to state that "something had to be done about her and that it took all he had 'to hold back.'" [*Id*.] Allegedly, Hampton replied that they would discuss it when he returned to the office and he was ready to let Percell "see what her resume is worth." [*Id*.]

According to Percell, on or around April 4, 2016, she verbally reported to the Academy Equal Employment Officer Martin Jones her concern that the Academy failed to adhere to the proper hiring procedures. [*Id*. at 4-5.] She recalls specifically stating at that time: "1) she had been forced to take on additional duties of a departing employee and she possessed the skills, experience and qualifications to be placed into a higher pay grade but has been denied same by Bluegrass ChalleNGe Academy; and 2) white females and males are given preferential treatment by being placed into positions with higher pay grades than African-American females, like herself, even though such white females and males did not possess the requisite skills and/or

3

qualifications for such grades." [*Id*. at 5] Percell recalls that Jones told her she had 365 days to prepare a written complaint, and she replied that she would do so over the next few months. [*Id*.]

Percell states that on or about early June of 2016, Percell's husband, Danny Percell, experienced health issues and was hospitalized for approximately nine days. [*Id*.] Around the week of June 6, 2016, Percell recalls that she attended a meeting with Deputy Director Hampton where she verbally protested that she should be advanced to the same pay grade as the other white, female administrative employees. [*Id*.] Around that same time, Percell states that she used two and a half of her sick and vacation days to care for her husband. [*Id*.] While she was at home with her husband, they were informed by medical providers that he would need a lung transplant, which would be performed at a facility in Pittsburgh, Pennsylvania. [*Id*.]

On or around Saturday, June 11, 2016, Percell went in to her office to catch up on work after being out for a couple days. [*Id*.at 6.] While at the Academy, Percell alleges that she informed Administrative Branch Manager Michael Major and Cadre Supervisor Dilbert Richardson that she would need to take some time off due to her husband's lung transplant procedure in Pittsburgh and that she would discuss it with them further on Monday, June 13, 2016, when Director Charles Jones would be present. [*Id*.]

On or about Monday, June 13, 2016, at 7:40 A.M., Director Charles Jones emailed Administrative Branch Manager of Personnel and Payroll Crystal Simpson that he intended to terminate Percell for failure to perform duties and listed the reasons for his decision therein. [*Id*.] Percell alleges that the reasons listed by Director Charles Jones include "minor occurrences that took place one (1) year prior, occurrences that were out of the control of Percell, and items that were never even brought to the attention of Percell." [*Id*.] Percell also notes that EEO Officer Martin Jones is the nephew of the Academy Director Charles Jones. [*Id*.]

On or about June 14, 2016, Percell recalls that Director Jones handed her a letter signed by Department of Military Affairs Executive Director Michael A. Jones stating that she was terminated as an employee at the Academy. [*Id.*] Percell claims that no further explanation was given to her. [*Id.*]

**STANDARD**

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In order to survive a motion to dismiss under Rule 12(b)(6), a party must "plead enough 'factual matter' to raise a 'plausible' inference of wrongdoing." *16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 504 (6th Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A claim becomes plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). When considering a Rule 12(b)(6) motion to dismiss, the court must presume all of the factual allegations in the complaint are true and draw all reasonable inferences in favor of the non-moving party. *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008) (citing *Great Lakes Steel v. Deggendorf*, 716 F.2d 1101, 1105 (6th Cir. 1983)). "The court need not, however, accept unwarranted factual inferences." *Id.* (citing *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987)). Should the well-pleaded facts support no "more than the mere possibility of misconduct," then dismissal is warranted. *Iqbal*, 556 U.S at 679. The Court may grant a motion to dismiss "only if, after drawing all reasonable inferences from the allegations in the complaint in favor of the plaintiff, the complaint still fails to allege a plausible theory of relief." *Garceau v. City of Flint*, 572 F. App'x. 369, 371 (6th Cir. 2014) (citing *Iqbal*, 556 U.S. at 677–79).

**DISCUSSION**

Commonwealth moves to dismiss Percell's complaint under two lines of reasoning: First, Commonwealth argues that Percell fails to allege the elements necessary for a prima facie case of discrimination under the Kentucky Civil Rights Act, KRS 344.040 *et seq.* ("KCRA"). [*See* R. 18-1 at 5-9 (Memorandum in Support of Motion to Dismiss).] Secondly, Commonwealth asserts that Percell fails to allege facts necessary to plead a claim of violation of the Family and Medical Leave Act, 29 U.S.C. § 2601 *et seq.* [*Id.* at 9-13.] Despite these arguments, the Court finds that, at this stage in the proceedings, Percell has "plead enough 'factual matter' to raise a 'plausible' inference of wrongdoing." *16630 Southfield Ltd. P'ship*, 727 F.3d at 504.

**I.   Claims Under KRS 344.040** *et seq.*

In the Complaint, Percell claims that Commonwealth violated KRS 344.280 by "retaliating and/or discriminating against Percell because she opposed a practice declared unlawful by KRS 344.040, *et seq.*" [R. 17 at 6, ¶ 28.] Commonwealth argues that this is in essence a retaliation claim, not a discrimination claim, and Percell has failed to state a claim under KRS 344.280 and failed to allege damages against Commonwealth. [*See* R. 18-1 at 5-8.] Furthermore, Commonwealth adds that this retaliation claim is barred by the statute of limitations. [*See id.* at 8-9.]

**A.  Stating a Prima Facie Claim for Retaliation**

To establish a prima facie case for retaliation, a party must demonstrate: (1) she engaged in a protected activity; (2) her engagement in that protected activity was known to her employer; (3) her employer, thereafter, took an adverse employment action against her; and (4) that a causal link exists between her engagement in the protected activity and the adverse employment action. *Brooks v. Lexington–Fayette Urban Cty. Hous. Auth.*, 132 S.W.3d 790, 801–803 (Ky.2004);

*Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir.2000) (applying the same standard under Title VII). "Although no one factor is dispositive in establishing a causal connection, evidence . . . that the adverse action was taken shortly after the plaintiff's exercise of protected rights is relevant to causation." *Nguyen*, 229 F.3d at 563. "[P]revious cases that have permitted a prima facie case to be made based on the proximity of time have all been short periods of time, usually less than six months." *Parnell v. West*, No. 95-2131, 1997 WL 271751, at *3 (6th Cir. May 21, 1997)). The causal link can be proven through two ways, either: "(1) through direct evidence; or (2) through knowledge coupled with a closeness in time that creates an inference of causation." *Nguyen*, 229 F.3d at 566.

Before engaging in an analysis of the claim itself, the Court must address the dispute between the parties over whether Percell is required to plead a prima facie case of retaliation at this stage in the litigation. [*See* R. 18-1 at 5-6; R. 19 at 8-9 (Percell's Response).] On this subject, the Supreme Court stated:

> This Court has never indicated that the requirements for establishing a prima facie case under *McDonnell Douglas* also apply to the pleading standard that plaintiffs must satisfy in order to survive a motion to dismiss. For instance, we have rejected the argument that a Title VII complaint requires greater "particularity," because this would "too narrowly constric[t] the role of the pleadings." Consequently, the ordinary rules for assessing the sufficiency of a complaint apply.

*Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 511 (2002) (citation omitted). The Sixth Circuit later clarified:

> [A]lthough the Amended Complaint need not present "detailed factual allegations," it must allege sufficient "factual content" from which a court, informed by its "judicial experience and common sense," could "draw the reasonable inference," *Iqbal*, 556 U.S. at 678, 679, 129 S.Ct. 1937, that [the defendant] "discriminate[d] against [the plaintiff] with respect to [her] compensation, terms, conditions, or privileges of employment, because of [her] race, color, religion, sex, or national origin."

7

*Keys v. Humana, Inc.*, 684 F.3d 605, 610 (6th Cir. 2012) (citing 42 U.S.C. § 2000e–2(a)(1)).[1] Therefore, the Court will apply the ordinary rules for assessing a complaint.

In the instant action, Commonwealth argues that Percell has not alleged a causal connection between her April 4, 2016 verbal complaint to Equal Opportunity Officer Martin Jones and her termination by Director Charles Jones on June 14, 2016. [*See* R. 18-1 at 6-7.] Percell argues that there is a causal connection based off the short time span of two months between her verbal complaint and her termination and the history of complaints she raised in relation to being passed over for promotions by white women, all of which is listed in her Complaint. [*See* R. 19 at 9-11; R. 17 at 3-6.]

This Court previously faced a similar situation in *Tyler v. University of Louisville*, in which the Court found it was not necessary at the time of a motion to dismiss for the Court to require direct evidence or knowledge of a causal connection when the other three elements of a prima facie case were already satisfied. *See Tyler*, No. 3:06-CV-151-R, 2006 WL 3412273, at *10-11 (W.D. Ky. Nov. 27, 2006). At this stage in the litigation, the Court finds that these facts put forth by Percell in the Complaint are satisfactory for the Court to draw the reasonable inference that retaliation may have occurred in the form of termination after Percell's verbal complaint to the EEO Officer, allowing the claim to survive the motion to dismiss.

### B. Inappropriate Demand for Relief

In the "Causes of Action" section of the Complaint, Percell incorrectly cites "Heaven Hill's" statutory violations as the cause of her damages. [R. 17 at 7.] Even though Commonwealth stated that it assumed this to be a drafting error by counsel, [R.

---

[1] This was a case specifically involving a discrimination claim; however, the Sixth Circuit spoke broadly of the application of *Iqbal*. Thus, the Court finds it reasonable to apply the same standard here.

18-1 at 4, FN 1], Commonwealth goes on to take the position that it should not be held responsible for the damages caused by "Heaven Hill's" violations. [R. 18-1 at 8.] Percell validated in her Response that this was indeed a drafting error and she meant to list Commonwealth. [R. 19 at 12.]

As this Court has stated before, serving the correct party but under the wrong legal name is distinguishable from serving the wrong party with summons and a complaint which contain the correct legal name. *See Watkins v. Matrix Absence Mgmt. Group*, No. 3:16-CV-130-TBR, 2016 WL 4392819, at *3, FN 3 (W.D. Ky. Aug. 15, 2016) (citing *Grandey v. Pac. Indem. Co.*, 217 F.2d 27, 29 (5th Cir. 1954) ("The test should be whether, on the basis of an objective standard, it is reasonable to conclude that the plaintiff had in mind a particular entity or person, merely made a mistake as to the name, and actually served the entity or person intended; or whether plaintiff actually meant to serve and sue a different person."). (quoting 2 Moore's Federal Practice, 2nd ed., Sec. 4.44, p. 1042)). Clearly, Percell had Commonwealth in mind while drafting the Complaint, and listing "Heaven Hill" was a mistake. Furthermore, Percell still served the party intended. The proper remedy in this type of situation would be to permit Percell to amend her complaint, not dismiss it. *See id.* at 3 (citing *United Co. v. Am. Int'l Southern Co.*, 2008 U.S. Dist. LEXIS 82173 *3-4 (E.D. Ky. 2008); *Hawkins v. Department of Mental Health*, 89 F.R.D. 127, 128 (W.D. Mich. 1981) ("A suit at law is not a children's game, but a serious effort on the part of adult human beings to administer justice; and the purpose of the process is to bring parties into court. If it names them in such terms that every intelligent person understands who is meant, as is the case here, it has fulfilled its purpose; and courts should not put themselves in the position of failing to recognize what

is apparent to everyone else.") Therefore, the Court will disregard counsel's drafting error and deny Commonwealth's argument for dismissal.

C. The Statute of Limitations

Lastly, in regards to the retaliation claim, Commonwealth argues that Percell may not rely on allegations that occurred over five years prior to filing this action due to the statute of limitations under KRS 413.120(2). [*See* R. 18-1 at 8.] Percell retorts that she may use conduct falling outside the limitations period as background evidence in support of claims that fall within the limitations period. [*See* R. 19 at 11.] In support, Percell cites to *National Railroad Passenger Corporation v. Morgan*, in which the Supreme Court found that the charging requirement of Title VII does not "bar an employee from using the prior acts as background evidence in support of a timely claim." 536 U.S. 101, 113, (2002). The Sixth Circuit quoted *Morgan* for the same reason five years later. *See Ploscowe v. Kadant,* 121 F. App'x 67, 72 FN 6 (6th Cir. 2005) ("However, despite the fact that the incidents involving the Nazi flag and the comment that 'your people killed my God' occurred outside this the 300 day time limitation, they may still be considered 'as background evidence in support of a timely claim.'") (quoting *Morgan*, 536 U.S. at 113). Under the authority of the Supreme Court and the Sixth Circuit, the Court finds that Percell's claim is not time barred by the statute of limitations if she uses the disputed conduct as "background evidence."

In sum, despite Commonwealth's arguments to the contrary, Percell's retaliation claim under KRS 344.280 survives dismissal.

II. **Claim Under the FMLA**

Percell also claims in the Complaint that Commonwealth violated the FMLA, specifically 29 U.S.C. § 2615(a)(1), "by interfering and attempting to interfere with Percell's exercise of her rights under the FMLA by discharging her from employment." [R. 17 at 7-8, ¶36.] Commonwealth argues that Percell failed to state a claim under § 2615 and under § 2617, which provides the cause of action for § 2615. [*See* R. 18-1 at 9-13.]

**A. Section 2615**

"The FMLA entitles qualifying employees up to 12 work weeks of leave under specified circumstances, including if they are suffering from a serious health condition." *Tennial v. United Parcel Serv., Inc.*, 840 F.3d 292, 307 (6th Cir. 2016) (citing 29 U.S.C. § 2612(a)(1)(D)). The Sixth Circuit "has recognized two theories of recovery under the FMLA: interference and retaliation." *Id*. (citing *Seeger v. Cincinnati Bell Tel. Co., LLC*, 681 F.3d 274, 282 (6th Cir. 2012)). Here, Percell only brings an interference claim. [*See* R. 17 at 7.]

The FMLA makes it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided" by the FMLA. 29 U.S.C. § 2615(a)(1). "[A]n employer violates the FMLA under the 'interference' theory if it fails to provide its employee with his FMLA entitlements or interferes with an FMLA-created right, regardless of the employer's intent." *Casagrande v. OhioHealth Corp.*, 666 F. App'x 491, 496 (6th Cir. 2016) (citing *Arban v. W. Publ'g Corp.*, 345 F.3d 390, 401 (6th Cir. 2003)). To prevail on an interference theory claim under the FMLA, an employee must prove: "(1) she was an eligible employee; (2) the defendant was an employer as defined under the FMLA; (3) she was entitled to leave under the FMLA; (4)

11

she gave the employer notice of her intention to take leave, and (5) the employer denied the employee FMLA benefits to which she was entitled. *Edgar v. JAC Prods., Inc.*, 443 F.3d 501, 507 (6th Cir.2006) (citing *Walton v. Ford Motor Co.*, 424 F.3d 481, 485 (6th Cir. 2005)). As explained above, in examining the pleadings at this stage in the litigation, the Court will apply the ordinary rules for assessing the sufficiency of a complaint, not the *McDonnell Douglas* burden-shifting framework. *See Swierkiewicz*, 534 U.S. at 511.

In the case at hand, Commonwealth argues that Percell fails to allege two of the elements of an interference claim: (3) that she was entitled to leave under the FMLA and (4) that she gave the employer notice of his intention to take leave. [R. 18-1 at 11.] Although Percell is not required to necessarily allege a prima facie case at the pleading stage, the Complaint must allege sufficient "factual content" from which a court, informed by its "judicial experience and common sense," could "draw the reasonable inference" that Commonwealth interfered with an FMLA-created right. *Iqbal*, 556 U.S. at 678.

In relation to the third element of entitlement to leave, Percell alleges that her husband needed a lung transplant and would have to travel to Pittsburgh, Pennsylvania for the procedure. [R. 17 at 5.] "The FMLA entitles an eligible employee to twelve weeks of leave during a year to care for a newborn child or to care for a child or spouse suffering from a 'serious health condition.' A 'serious health condition' is 'an illness, injury, impairment, or physical or mental condition that involves inpatient care in a hospital, or continuing treatment by a health care provider.'" *Willard v. Ingram Constr. Co.*, No. 98-6261, 1999 WL 801508, at *2 (6th Cir. 1999) (citations omitted) (quoting 29 U.S.C. § 2612(a)(1)(A) & (C) and then 29 U.S.C. § 2611(11)). Percell needed to care for

her spouse who was clearly suffering from a "serious health condition." Thus, she satisfied the pleading requirements for the third prong of an interference claim.

As for the fourth element, Percell argues that she was only required to give information to her employer that would be "sufficient to reasonably apprise it of the employee's request to take time off for a serious health condition." [R. 19 at 14 (quoting *Brohm v. JH Props. Inc.,* 149 F.3d 517, 523 (6th Cir. 1998)).] She reasons that she satisfied this requirement by informing Administrative Branch Manager Michael Major and Cadre Supervisor Dilbert Richardson that she would need time off to care for her husband. [*See* R. 19 at 14; R. 17 at 6, ¶ 25.] In contrast, Commonwealth argues that Percell did not inform her supervisors to a sufficient degree. More specifically, Commonwealth states that Percell failed to describe "(1) when she would be needing to take off or (2) how much time she would be needing." [R. 20 at 11 (Commonwealth's Reply).] Commonwealth cites to the Seventh Circuit case of *Nicholson v. Pulte Homes Corporation* for the proposition that " 'casual comments' and open-ended statements are insufficient to put the employer on notice of the need for FMLA leave." [*Id*. (quoting *Nicholson*, 690 F.3d 819, 826 (7th Cir. 2012).] Aside from the fact that *Nicholson* is a Seventh Circuit case, it is distinguishable from the case at hand because the plaintiff in *Nicholson* only informed her employer of the *possibility* of needing to take time off in the future to take her father to chemotherapy,690 F.3d at 827, whereas Percell alleges in the Complaint that she made the more definite statement that "her husband would need a lung transplant in Pittsburgh" and "she would be needing to take some time off." [R. 17 at 6.]

As cited by Percell, the Sixth Circuit has stated:

> "Moreover, [t]he employee need not expressly assert rights under the FMLA or even mention the FMLA, but may only state that leave is needed. The employer will be expected to obtain any additional required information through informal means." The employee's burden is not heavy. " '[A]n employee gives his employer sufficient notice that he is requesting leave for an FMLA-qualifying condition when he gives the employer enough information for the employer to reasonably conclude that an event described in the FMLA § [2612(a)(1) ] has occurred.' " In addition, part of reasonable notice generally includes an indication of "the anticipated timing and duration of the leave."

*Wallace v. FedEx Corp.*, 764 F.3d 571, 586 (6th Cir. 2014) (quoting *Cavin v. Honda Am. Mfg., Inc.*, 346 F.3d 713, 723-24 (6th Cir. 2003)). In comparison to past case law, under the more strenuous standards of Summary Judgment, the Sixth Circuit held that the plaintiff did not satisfy the notice requirement in *Brohm v. JH Properties, Inc.*, when the plaintiff did not offer evidence that he requested medical leave, *Brohm*, 149 F.3d at 523, but found that the plaintiff did satisfy this requirement in *Perry v. Jaguar Troy* when the plaintiff discussed his ill son at work and specifically mentioned FMLA leave to his supervisor. *See Perry*, 353 F.3d 510, 513 (6th Cir. 2003). The case at hand seems to fall in between these two cases in terms of notification. However, a closer analysis is not called for at this early stage in the proceedings. In considering this motion to dismiss, the Court finds that Percell has pled sufficient factual content for the Court to draw the reasonable inference that Commonwealth interfered with Percell's right to take FMLA leave to care for her husband.

### B. Independent Reason for Termination

" '[I]nterference with an employee's FMLA rights does not constitute a violation if the employer has a legitimate reason unrelated to the exercise of FMLA rights for engaging in the challenged conduct.' 'If the employee cannot show that he was discharged because he took leave-or at least that his taking of leave was a negative factor

in the employer's decision to discharge him-he cannot show a violation of the FMLA.'" *Mitchell v. Cty. Of Wayne*, 337 F. App'x 526, 532 (6th Cir. 2009) (citations omitted) (quoting *Edgar*, 443 F.3d at 508 and then *Pharakhone v. Nissan North America, Inc.*, 324 F.3d 405, 408 (6th Cir.2003)). Here, Commonwealth argues that Percell fails to allege that she was terminated because of her request for FMLA leave, rather than the independent reason of "her insubordination and failure to perform essential job duties."[2] [R. 20 at 12.] Percell only responds by saying that her factual recitation of her discharge does not amount to an admission to any alternative reason for her termination. [*See* R. 19 at 11, FN 1.] In the Complaint, Percell alleges that two days after informing Administrative Branch Manager Michael Major and Cadre Supervisor Dilbert Richardson that she would need to take leave in order to accompany her husband to his lung transplant, she was fired. [R. 17 at 6.] As previously explained, an FMLA plaintiff is required to plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Rhodes v. R & L Carriers, Inc.*, 491 F. App'x 579, 583–84 (6th Cir.2012) (citing *Iqbal*, 556 U.S. at 678). At this early stage in the litigation, the pleaded facts allow a reasonable inference that Percell's request for leave was at least "a negative factor" in Commonwealth's decision to discharge her. *See Mitchell*, 337 F. App'x at 532. Thus, the claim survives dismissal.

    C.  **Section 2617**

---

[2] Commonwealth cites *Tilley v. Kalamazoo County Road Commission* in support of the claim that the Sixth Circuit has previously found failure to perform duties as a valid reason for termination. [R. 18-1 at 11-12 (citing *Tilley* 654 F. App'x 675, 681 (6th Cir. 2016)).] The Court finds this to be an oversimplification of the Sixth Circuit's reasoning. Furthermore, the Sixth Circuit did not dismiss the FMLA claim in that case, as Commonwealth alleges. [R. 18-1 at 12]. The Sixth Circuit actually reversed the district court's finding of summary judgment in favor of the employer on the interference and retaliation claims. *See Tilley*, 654 F. App'x at 686.

Twenty-nine U.S.C. § 2617 provides a cause of action for violations of § 2615. *See Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 89 (2002). On this matter, the Supreme Court stated:

> To prevail under the cause of action set out in § 2617, an employee must prove, as a threshold matter, that the employer violated § 2615 by interfering with, restraining, or denying his or her exercise of FMLA rights. Even then, § 2617 provides no relief unless the employee has been prejudiced by the violation: The employer is liable only for compensation and benefits lost "by reason of the violation," § 2617(a)(1)(A)(i)(I), for other monetary losses sustained "as a direct result of the violation," § 2617(a)(1)(A)(i)(II), and for "appropriate" equitable relief, including employment, reinstatement, and promotion, § 2617(a)(1)(B). The remedy is tailored to the harm suffered.

*Ragsdale*, 535 U.S. at 89. Commonwealth argues that Percell fails to allege a claim for relief under § 2617 and that Percell was not prejudiced by her termination because she was terminated prior to the exercise of her FMLA rights. [R. 18-1 at 13.]

In response to Commonwealth's argument that Percell failed to allege a claim for relief under § 2617, this Court consults the precedent of the Sixth Circuit:

> As this court has stated, "the fundamental tenor of the Rules is one of liberality rather than technicality, and it creates an important context within which we decide cases under the modern Federal Rules of Civil Procedure." Therefore, the Rules require that we not rely solely on labels in a complaint, but that we probe deeper and examine the substance of the complaint. Indeed, this court has made clear that "the label which a plaintiff applies to a pleading does not determine the nature of the cause of action which he states."

*Minger v. Green*, 239 F.3d 793, 799 (6th Cir. 2001) (citations omitted). A similar situation to the issue at hand occurred in *U.S. ex rel Tillson*, in which Tillson listed the wrong statute in his complaint. *See U.S. ex rel Tillson v. Lockheed Martin Energy Sys., Inc.*, No. Civ.A.5:00-39-M, Civ.A. 5:99-CV-170-M, 2004 WL 2403114, at *14 (W.D. Ky. Sept. 30, 2004). This district stated that this was not fatal to Tillson's complaint:

> A complaint need not point to the appropriate statute or law in order to raise a claim for relief under Rule 8 . . . . [A] complaint sufficiently raises a claim even it

16

> points to no legal theory or even if it points to the wrong legal theory as a basis for that claim, as long as relief is possible under any set of facts that could be established consistent with the allegations.

*Id.* (quoting *Morales–Vallellanes v. Potter*, 339 F.3d 9, 14 (1st Cir. 2003). Here, the Complaint does not require much probing for the Court to understand the basis of the claim. It clearly alleges interference, which would logically require the utilization of § 2617. Therefore, the claim is not dismissed on these grounds.

Commonwealth also argues that Percell did not allege she was prejudiced by her termination, as required by § 2617. "Employees seeking relief under the entitlement theory must therefore establish that the employer's violation caused them harm." *Edgar*, 443 F.3d at 508 (citing *Ragsdale*, 535 U.S. at 89 (("[Section] 2617 provides no relief unless the employee has been prejudiced by the violation . . ..")). "Often the harm suffered by the employee relevant to his claim of unlawful interference is the employee's termination from his position." *Festerman v. Cty. of Wayne*, 611 F. App'x 310, 318 (6th Cir. 2015). At the very least, Percell alleges that she was terminated from her position, which, according to *Festerman*, is enough to qualify as a harm for the purposes of § 2617. Therefore, the claim will survive dismissal despite Commonwealth's arguments concerning § 2617.

In sum, Percell's interference claim under the FMLA survives dismissal.

### III. Failure to Plead Discrimination

In its Reply, Commonwealth argues that Percell inappropriately asserted a claim for discrimination under KRS 344.040 in her Response without originally pleading the claim in her Complaint. [R. 20 at 4.] The Court denies this argument under the same reasoning and case law previously explained above in relation to Commonwealth's

argument that Percell did not properly plead a claim under § 2617. Furthermore, at this early stage in the pleadings, the Court draws a reasonable inference of discrimination from the temporal proximity alleged in the Complaint between her verbal complaint and her termination, as well as the alleged discriminatory pattern of white, female employees being promoted over Percell. [*See* R. 17 at 3-6.] Therefore, Percell's claim survives dismissal.

## CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED**: Commonwealth's Motion to Dismiss, [R. 18], is **DENIED**.

**IT IS SO ORDERED.**


cc: Counsel of Record